### Gulick's Executors *vs.* Gulick and others.

1. A bequest of $10,000 to a daughter, to be held by testator's executors in trust for her, the interest to be paid to her annually, and if she should marry, and have a child or children, then after her death, the $10,000 to go to such child or children, passes the funds to her executors, subject to her disposition of it by will, upon her death without issue.

2. The gift of the produce of a fund, without limit as to time, passes the fund itself.

3. Where there is a gift to children or other legatees, the shares being given absolutely in the first instance, followed by a direction to settle the

shares upon trusts which do not exhaust the whole interest, the legatees take their shares absolutely, subject to the qualifying trusts.

4. And where the testator provides that the portion of his daughters shall be held in trust by his executors or other persons appointed for the purpose, during the life of the daughters, and go to their children or issue, if any such they have, at their decease, this is regarded as a qualification or limitation of the estate of such daughters only as leave children or issue, and will not affect the vested or transmissible character of the shares of such daughters as die without leaving children or issue.

5. The fact of a settlement by testator in such case to the use of a daughter, free from the control of any husband she might have, is no evidence that the testator intended that she should have a life estate only.

6. Where, after an estate has been settled, a trust fund remains in the hands of the executors, separated from the general residue, which they have held for a legatee during life, and on the decease of the legatee several claimants for the fund appear, the costs of a suit instituted by the executors, to determine the ownership of the fund, must be borne by the fund itself.

This cause was argued on bill and answers.

*Mr. C. S. Green*, for the executors of William Gulick, deceased.

*Mr. A. G. Richey* and *Mr. B. Gummere*, for the executors of Abby Maria Gulick, deceased.

*Mr. J. Wilson*, for James H. Gulick and William A. Gulick and wife.

THE CHANCELLOR.

The bill is filed by the executors of the last will and testament of William Gulick, deceased, late of Princeton, in this state, for the construction of a bequest of $10,000 therein, in favor of his daughter, Abby Maria. The will is dated July 13th, 1855. By it, the testator gave to his son James, $2000, to be placed out at interest on bond and mortgage ; the bonds and mortgages to be taken in the names of his executors, and the interest to be paid annually to James by the executors, for his sole and separate use, and to be in no wise liable for

his debts, and after his death, to go to his children in equal shares. And he gave to his executors and to the survivor of them, the farm on which the family of his son, William A. Gulick, then lived, together with other real estate described in the will, in trust, nevertheless, that the executors and the survivor of them, should receive the rents, issues, and profits of that real estate, and pay them to William and William's then wife, each and every year during their lives, to their sole and separate use, the same to be in no wise liable to the debts of William ; and after the death of William and his then wife, he devised the real estate so held in trust for them, to their children, in equal shares. To his son Alexander, he devised the farm on which the testator then lived, for life, with remainder to Alexander's children in fee, in equal shares. To his daughter Abby Maria, who was unmarried, he bequeathed as follows : "I give and bequeath to my daughter Abby Maria, the sum of ten thousand dollars, to be placed out at interest on bond and mortgage, so soon as my estate can be collected without sacrifice ; the bonds and mortgages to be taken in the names of my executors or the survivor of them, in trust for my said daughter Abby Maria, and the interest to be paid annually to her by my said executors or the survivor of them, for her sole and separate use, and in no wise liable for the debts, or subject to the control, of any man she may marry ; should she marry, and have a child or children, then, after her death, I give the said ten thousand dollars to such child or children." To his married daughter, Elizabeth H., he gave a like sum, to be placed at interest in like manner, and on the like trust, except that he provided that the bonds and mortgages should be taken in the names of the executors other than her husband, he being one of the executors, and after her death, the money bequeathed to her should go to her children, in equal shares. All the rest and residue of his estate, both real and personal, he gave, devised, and bequeathed absolutely, to his five children above named, in fee simple, in equal shares. He appointed his sons, James and Alexander, and his son-in-law, Edward

Armstrong, executors. By a codicil to the will, dated February 14th, 1863, he revoked the gift to William, in the residuary section of the will, and instead thereof, gave, devised, and bequeathed the one equal one-fifth part of all the rest and residue of his estate, both real and personal, to his executors in the codicil named, and the survivor of them, but in trust, nevertheless, for the use and benefit of Sarah, the then wife of William, during her life, and to be in no wise subject to the debts or control of William, and after her death, it was to go to the children of her and William absolutely, in equal shares ; and, in case any of those children should die in the lifetime of their mother, leaving issue, such issue should take the same share as their parents, if living, would have taken. By the codicil, he revoked the appointment of executors made in the will, and appointed the complainants, Alexander Gulick and Job Olden, executors.

Abby Maria did not marry. She died on or about the 20th of May, 1873, leaving a will by which, after providing for the payment of her debts and funeral expenses, and the erection of a tombstone over her grave, she gave all her property to the children of her sister Elizabeth. Her executor claims the $10,000 mentioned in the above quoted section of the will. On the other hand, it is claimed that it passed under the will of William Gulick, deceased, to those who are now interested in the residuum of his estate ; or, if not, then to his next of kin. The executor of Abby Maria insists that, subject to the qualifying trust and conditional limitation, she took the gift of $10,000, absolutely. On the other hand, it is insisted that she took only the interest of it for life.

The testator gave to Abby, by the bequest under consideration, $10,000, to be held by his executors or the survivor of them, in trust for her, and the interest to be paid annually to her by the executors or the survivor of them, for her sole and separate use, and not to be liable for the debts, or subject to the control, of any husband she might have ; and he further provided that, if she should marry, and have a child or children, then, after her death, the $10,000 were to go to

such child or children.  In its terms the bequest is absolute. Besides, the produce of the fund is given to her without limit as to time.   That, in this case, passed the fund itself.   2 *Roper on Legacies* 1476, *et seq.*;  *Adamson* v. *Armitage*, 19 *Ves.* 416;  *Manning* v. *Craig*, 3 *Green's Ch. R.* 436;  *Haig* v. *Swiney*, 1 *Sim. & Stu.* 487;  *Billing* v. *Billing*, 5 *Sim.* 232;  *Hawkins* v. *Hawkins*, 7 *Sim.* 173;  *Clarke* v. *Gould, Id.* 197;  *Humphrey* v. *Humphrey*, 1 *Sim. N. S.* 536. The testator nowhere provides that the $10,000 shall go over to any one, or fall into the residue of his estate, in case Abby should not have lawful issue.

The plan of his will manifestly was to give his children equal shares of his estate.  All the rest of his children except Abby, were married, and had children living when the will was made.  In the case of each of the others, he gives to the parent or parents the use or interest for life, and at his, her, or their death, the fund or the real estate to his, her, or their children.  There is no clause of accruer in any instance, and he makes no provision in regard to the fund or property, in case neither the children nor their issue should survive the parent to whom the interest or use for life is given.  Abby has no interest under the will in the particular devises and bequests to her brothers and sisters and their children.  Equality, therefore, does not require that they should have any in the bequest to her.  It is clear from the language of the bequest under consideration, that the testator intended to give the $10,000 to Abby, settling it on her to protect it against any husband she might have, and securing it, in case she should marry and have issue, to her child or children.  Where there is a gift to children or other legatees, the shares being given absolutely in the first instance, followed by a direction to settle the shares upon trusts which do not exhaust the whole interest, the legatees take their share absolutely, subject to the qualifying trusts.  And where the testator provides that the portion of his daughters shall be held in trust by his executors or other persons appointed for the purpose, during the life of his daughters, and go to their

children or issue, if any such they have, at their decease, this is regarded as a qualification or limitation of the estate of such daughters only as leave children or issue, and will not affect the vested or transmissible character of the shares of such daughters as die without leaving children or issue. *Hawkins on Wills* 267; 2 *Redfield on Wills* 649; *Jarman on Wills* 749, 784; *Whittell* v. *Dudin*, 2 Jac. & W. 279; *Hulme* v. *Hulme*, 9 Sim. 644; *Mayer* v. *Townsend*, 3 Beav. 443; *Jackson* v. *Noble*, 2 Keen 590; *Alston* v. *Davis*, 2 Head (*Tenn.*) 266. This principle was recognized in *Wurts' Ex'rs* v. *Page*, 4 C. E. Green 365. Abby having died without issue, this qualification or limitation of her estate did not affect its vested or transmissible character. Nor is the fact of the settlement to her use, free from the control of any husband she might have, evidence that the testator intended that she should have a life estate only. Adamson v. Armitage, Whittell v. Dudin, Jackson v. Noble, Mayer v. Townsend, Wurts' Ex'rs v. Page. The case of *Joslin* v. *Hammond*, 3 M. & K. 110, was relied on by counsel for the residuary legatees and next of kin of William Gulick, as authority for holding that the testator died intestate of the $10,000 mentioned in the bequest under consideration. That case, however, is clearly distinguishable from this. There the testator gave his whole property to his wife, on condition that she should pay an annuity to his mother, for the life of the latter, and he directed that at the death of his wife the whole of his property should be equally divided between those of his children who might survive her. He provided that in case of the re-marriage of his wife, each of his children on arriving at the age of twenty-four should be paid £400. He left one child surviving him, and a posthumous child was born. Both died in the lifetime of the widow, without issue. The widow married again, and died, leaving her husband surviving her. It was held that in the events which had happened, the testator's property was undisposed of, and that the next of kin, and not the second husband in right of his wife, were entitled to it. The decision in that case was put

upon the ground, that from the whole context of the will it was apparent, that it was the intention of the testator, that in no event the wife should have other than a life estate, and that it was not a probable intention to be imputed to him, that if his children died in the lifetime of his widow, leaving families, she, on her second marriage, should enjoy the whole property. In the case before me there is nothing, either in the terms of the bequest or in the context, to indicate that the testator intended that Abby should have no more than a life interest. The testator not only begins the bequest by giving her the money, absolutely, but follows that gift by an unlimited gift of the interest of the money, and making no limitation over to any person *in esse,* he merely declares a limitation dependent on the happening of a contingency. He does not give $10,000 to Abby for life, providing that if if she marry and have issue, the money is to go to such issue; but he gives the money to her, settling it to her use, with a limitation over in case a certain contingency shall happen.

The testator evidently did not intend to die intestate of the money mentioned in this bequest, and it is difficult to conceive why, if his intention had been that Abby should have a life interest only, he did not, when dealing with the fund, in view of the contingency alluded to and with the possibility if not the probability before him that she would not have issue, give direction to the fund at her death, in the event of her dying without issue. The probability that she would not marry, and that if she did, she would not have issue, seeing that she was, at the date of the will, well advanced in life, must have presented itself to him.

There will be a decree that the fund be paid over, with its accumulations, to the executor of Abby.

The costs in this case should be paid out of the legacy of Abby Maria. The estate of the testator, William Gulick, has been long since settled, and the legacies have either been paid over or are held in trust, according to the directions of the will, and the shares in the residuum have been dealt with in like manner. Though the costs of this suit may be re-

garded as "costs of executing the will," seeing that the executors, being uncertain as to who is entitled to the money in question, have come into court for directions, yet, under the circumstances, it seems equitable in this case, to follow the rule as to costs on interpleader. The executors are trustees for a fund which they have held in trust for the legatee during her life. On her decease, there appeared divers claimants of the fund, and this suit was instituted for the purpose of determining the ownership of it. It is just that it should bear the expense. *Jenour* v. *Jenour,* 10 *Ves.* 562. In that case it was held that if, after a residuary legatee has paid out of the bulk of the estate all that it is incumbent on him to pay, a question arises as to the interest in a legacy which has been clearly reserved from the bulk, the expense of questions touching that fund, ought to be thrown on the fund itself.